## BURNHAM v. McGEE BROS. CO., INC.

[221 N.C. App. 341 (2012)]

NICHOLAS R. BURNHAM, Plaintiff v. McGEE BROTHERS COMPANY, INC.,
Employer, and ZURICH AMERICAN INSURANCE COMPANY, Carrier, Defendants

No. COA11-1359

(Filed 19 June 2012)

**1. Workers' Compensation—denial of attorney fees—valid basis to resist request for assistance of rental expenses**

The Industrial Commission did not err in a workers' compensation case by denying plaintiff's motion for attorney fees under N.C.G.S. § 97-88.1 even though plaintiff contended that defendants had no valid legal basis for resisting his request for assistance with his rental expenses. Defendant had a valid basis since there were only two published cases in this jurisdiction addressing an employer's responsibility for providing handicapped-accessible housing for a totally disabled employee, and neither of those decisions addressed an issue involving ongoing rent payments as compared to the initial cost of rendering the employee's housing handicapped-accessible.

**2. Workers' Compensation—denial of attorney fees—proration of rent**

The Industrial Commission did not err in a workers' compensation case by denying plaintiff's motion for attorney fees under N.C.G.S. § 97-88.1 based on plaintiff challenging the Commission's finding that defendants raised a legitimate issue as to how the rent should be prorated between defendants and plaintiff. Even if plaintiff was correct that the proration issue was a relatively minor one, that fact did not support invalidation of the Commission's decision.

**3. Workers' Compensation—denial of attorney fees—sufficiency of finding of fact**

The Industrial Commission did not err in a workers' compensation case by denying plaintiff's motion for attorney fees under N.C.G.S. § 97-88.1 even though plaintiff contended that that the trial court erred by making finding of fact number 17. The Commission did not err by listing certain actions taken by plaintiff's employer rather than by the insurance carrier.

Appeal by plaintiff from Opinion and Award entered 9 May 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 March 2012.

BURNHAM v. McGEE BROS. CO., INC.

[221 N.C. App. 341 (2012)]

*Seth M. Bernanke for plaintiff-appellant.*

*Stiles, Byrum & Horne, L.L.P., by Henry C. Byrum, Jr., for defendants-appellees.*

ERVIN, Judge.

Plaintiff Nicholas R. Burnham appeals from a decision by the North Carolina Industrial Commission denying his motion for attorney's fees. On appeal, Plaintiff argues that the Commission erroneously determined that Defendants McGee Brothers and Zurich American had a valid basis for defending his claim for the cost of a second bedroom in his apartment and based its decision to that effect on impermissible considerations. After careful consideration of Plaintiff's challenges to the Commission's decision in light of the record and the applicable law, we conclude that the Commission's decision should be affirmed.

## I.  Factual Background

### A.  Substantive Facts

On 3 April 2008, Plaintiff was working for Defendant as a dump truck driver and an assistant equipment operator in connection with a project that involved clearing a lot that was to be used for a new home. As part of his work-related responsibilities, Plaintiff drove a dump truck filled with logs from the site at which the land-clearing project was being conducted to a saw mill. After Plaintiff released the straps securing the load of logs to the truck at the saw mill, a log rolled off of the truck and landed on him, causing him to sustain severe injuries that left him paralyzed below the waist.

Before sustaining his injury, Plaintiff shared a third-floor apartment, for which he paid half of the $829.00 monthly rent, which could only be accessed by mounting a staircase. After his accident, Plaintiff could not climb stairs, a fact which precluded him from living in this apartment. After undergoing rehabilitation, Plaintiff obtained interim housing with Brad and Patty Wright, who were friends of Plaintiff's girlfriend and had offered to help Plaintiff during his period of recovery because Mr. Wright had once sustained a similar injury. Don McGee, one of the owners of Defendant McGee Brothers, paid for modifications to the Wright's living room so that Plaintiff could live there despite his condition.

BURNHAM v. McGEE BROS. CO., INC.

[221 N.C. App. 341 (2012)]

Although Plaintiff lived in the Wright's living room for several months, he had recovered sufficiently to be able to live independently by October or November, 2008. At that time, Plaintiff found a handicapped-accessible, two-bedroom apartment in Huntersville for $779.00 per month. As a result of the fact that he intended to use the second bedroom to store the equipment, medical supplies, and mobility assistance devices that he needed as a result of his condition, Plaintiff did not seek to identify a roommate who could help pay the monthly rent for the apartment. Among other things, Plaintiff had a three-wheel hand cycle or "trainer," which he used to exercise; a walker; a power scooter; multiple sets of braces; forearm crutches; and a wheelchair that he could use to play tennis. Sheila Faeth, Defendants' adjuster, requested that Jennifer Burton, a registered nurse and certified case manager, inspect the apartment for the purpose of determining whether it met Plaintiff's needs. At the conclusion of her inspection, Ms. Burton answered that question in the affirmative.

At or about the end of the lease term for the Huntersville apartment, Plaintiff found a handicapped-accessible, two bedroom apartment in Gastonia, which was larger and cost $80.00 less than the Huntersville apartment. According to Fran Parker, a registered nurse and certified case manager hired by Defendants, Plaintiff needed a second bedroom for the purpose of storing his equipment, supplies, and other mobility-related devices. In addition, Ms. Parker concluded that having clear pathways and living space would play an important role in preventing Plaintiff from falling, help to increase Plaintiff's independence, and facilitate Plaintiff's ability to navigate around the apartment. Similarly, Ms. Burton agreed that it was reasonable for Plaintiff to have a second bedroom to store his equipment, supplies, and mobility-related devices. Finally, Dr. William Michael Scelza, a specialist in physical medicine and rehabilitation with a sub-specialty in treating spinal cord injuries who served as Plaintiff's treating physician, testified that having adequate space to store and use equipment, supplies, and devices would serve both a medical and rehabilitative function for Plaintiff. Although the parties appear to agree that Plaintiff's injuries are compensable, they did not agree about the extent, if any, to which Defendants should contribute to the ongoing rental cost of a two-bedroom handicapped-accessible apartment for Plaintiff and litigated that issue in this case.

## B.  Procedural History

After Plaintiff suffered an admittedly compensable injury on 3 April 2008, Defendants accepted his claim by filing Form 63 on 16

April 2008. On 11 December 2009, Plaintiff filed a Form 33 in which he requested a hearing concerning his claim for "payment of medical expenses/treatment," including a "medically necessary accessible apartment." In an accompanying letter, Plaintiff specified that he sought compensation for "the additional cost of housing due to [his] injury." In response, Defendants asserted that they had no obligation to contribute to Plaintiff's ongoing rental expenses because applicable "case law establishes that rent is an ordinary expense of life."

After a hearing held on 24 March 2010, Deputy Commissioner Bradley W. Houser issued an Opinion and Award on 7 October 2010 in which he granted Plaintiff's request for housing assistance; found that Defendants' conduct was "indicative of stubborn, unfounded litigiousness;" and awarded Plaintiff attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. On 10 December 2010, Defendants sought review by the Commission. On 9 May 2011, the Commission filed an Opinion and Award in which it affirmed Deputy Commissioner Houser's decision subject to certain modifications. In its order, the Commission found that, "for rehabilitation, safety and good health purposes, it is reasonably necessary for Plaintiff to have a place to store his medical equipment, supplies, and devices close enough for him to have easy access;" that "a two-bedroom apartment which allows Plaintiff to have a separate bedroom from his general living quarters to store and have easy access to his medical equipment, supplies, and devices is reasonably required to lessen his disability;" and that "the additional cost Plaintiff incurs to rent a handicapped-accessible, two-bedroom apartment to store his medically necessary equipment, supplies, and devices is the direct and natural result of and causally related to his April 3, 2008 admittedly compensable work injury that rendered him a paraplegic." In addition, the Commission found that Plaintiff's "need for an additional bedroom to store his various equipment, supplies, and devices separate from his general living quarters is medical compensation under [N.C. Gen. Stat. §] 97-25" and that "it would be reasonable under the circumstances for Defendants to pay for half of Plaintiff's cost in renting a handicapped-accessible, two-bedroom apartment." On the other hand, the Commission denied Plaintiff's claim for attorney's fees based on a determination that "Defendants had reasonable grounds to defend this claim, as some of the medical and other evidence was in dispute."

On 13 May 2011, Plaintiff requested the Commission to reconsider its decision with respect to the attorney's fees issue based on a contention that the Commission had relied upon an incorrect legal

standard in making that determination. On 31 August 2011, the Commission entered an amended order in which it inserted a new Finding No. 16 in lieu of the Finding of Fact No. 16 set out in the original order. Finding of Fact No. 16, as modified, provided that:

> 16. There was a valid legal issue regarding Defendants' obligation, if any, to contribute to Plaintiff's rent for accessible housing. In support of their contention that the expense of Plaintiff's housing is an ordinary expense of life for which Plaintiff was obligated to pay from his workers' compensation benefits, Defendants presented uncontested evidence through Ms. Delilah Freeman, the manager of Mill Creek Apartments where Plaintiff was living at the time of hearing, showing that there is no difference in the rent charged for handicapped accessible apartments and non-handicapped accessible apartments of the same size. Ms. Freeman further testified that it would be a violation of the State Fair Housing Act to charge a handicapped individual more for an apartment than a non-handicapped person. Defendants also raised a legitimate issue as to how the rent should be prorated between Defendants and Plaintiff, even if they were required to pay a portion of the rent.

In addition, the Commission added a new Finding of Fact No. 17, which provided that:

> 17. The Full Commission further finds that Defendants' conduct has been reasonable from the time of Plaintiff's injury. Defendant-Employer spent $15,000-$20,000 remodeling the home where Plaintiff chose to live following his release from a rehabilitation facility after his injury. Defendants then assisted Plaintiff in his move to an apartment after he moved from the home of Mr. and Ms. Wright that Defendant-Employer had renovated for him after living there for approximately six months. Defendant-Employer purchased and gave Plaintiff the title to a new vehicle which was modified to accommodate his needs. Defendant-Employer also gave Plaintiff's mother and father $5,000 for expenses when they came from Pennsylvania to visit him. Defendants also provided Plaintiff an advance payment to assist with the rent on his apartment for the first year after he moved to his own apartment. Defendants agreed to take a credit in the future in the amount of the advance payment if Plaintiff's case was resolved. Considering all of the evidence, Defendants' conduct and defense in this case did not constitute stubborn unfounded litigiousness.

BURNHAM v. McGEE BROS. CO., INC.

[221 N.C. App. 341 (2012)]

Plaintiff noted an appeal to this Court from the Commission's revised decision.

## II. Legal Analysis

### A. Standard of Review

The ultimate issue raised by Plaintiff's appeal is whether the Commission erred in the course of denying his motion for the imposition of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, which provides that, "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." "[N.C. Gen. Stat. §] 97-88.1 places the award of attorneys' fees in the discretion of the Commission by providing that, 'the Industrial Commission . . . may assess . . . reasonable fees for defendant's attorney or plaintiff's attorney.' " *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 398, 298 S.E.2d 681, 685 (1983). "The decision of whether to make such an award, and the amount of the award, is in the discretion of the Commission, and its award or denial of an award will not be disturbed absent an abuse of discretion." *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54-55, 464 S.E.2d 481, 486 (1995) (citing *Taylor*, 307 N.C. at 394, 298 S.E.2d at 685), *disc. review denied*, 343 N.C. 516, 472 S.E.2d 26 (1996)).

> "Review of an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 . . . required a two-part analysis. First, [w]hether the [party] had a reasonable ground to bring a hearing is reviewable by this court *de novo*." . . . If this Court agrees that the party lacked reasonable grounds, then we review the Commission's decision whether to award attorney's fees and the amount awarded for abuse of discretion.

*Clayton v. Mini Data Forms, Inc.*, 199 N.C. App. 410, 424, 681 S.E.2d 545, 553 (2009). "The abuse of discretion standard of review is applied to those decisions which necessarily require the exercise of judgment. The test for abuse of discretion is whether a decision 'is manifestly unsupported by reason,' or 'so arbitrary that it could not have been the result of a reasoned decision.' . . . Because the reviewing court does not in the first instance make the judgment, the purpose of the reviewing court is not to substitute its judgment in place of the decision maker. Rather, the reviewing court sits only to insure that the decision could, in light of the factual context in which it is made,

be the product of reason." *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985), and citing *State v. Wilson*, 313 N.C. 516, 538, 330 S.E. 2d 450, 465 (1985)).

## B. Denial of Attorney's Fees Claim

[1] In challenging the Commission's decision to refrain from awarding attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, Plaintiff argues that Defendants had no valid legal basis for resisting his request for assistance with his rental expenses given that an employer's "responsibility to pay for proper accommodative housing has been part of North Carolina law for many years." However, our review of the pertinent decisions in this area indicates that the exact point at issue in this case has not been specifically addressed. More particularly, we note that there are only two published decisions in this jurisdiction addressing an employer's responsibility for providing handicapped-accessible housing for a totally disabled employee and that neither of these decisions addressed an issue involving ongoing rent payments as compared to the initial cost of rendering the employee's housing handicapped-accessible. As a result, we conclude that the Commission did not err by determining that Defendants had a valid basis for resisting Plaintiff's claim.

The first appellate decision in North Carolina addressing the extent to which workers' compensation benefits included the cost of handicapped-accessible housing was *Derebery v. Pitt County Fire Marshall*, 76 N.C. App. 67, 332 S.E.2d 94 (1985), *rev'd*, 318 N.C. 192, 347 S.E.2d 814 (1986). The plaintiff in *Derebery* was, like Plaintiff, permanently disabled and confined to a wheelchair. After the Commission "ordered defendant to furnish plaintiff 'with an appropriate place to live in view of his disabled condition,' " *Derebery*, 76 N.C. App at 68, 332 S.E.2d at 95, this Court reversed, holding that "neither the provision requiring payment for 'other treatment or care' nor the provision requiring payment for 'rehabilitative services' can be reasonably interpreted to extend the employer's liability to provide a residence for an injured employee." *Derebery* at 72, 332 S.E.2d at 97. The Supreme Court, however, reversed this Court's decision, holding that:

> an employer must furnish alternate, wheelchair accessible housing to an injured employee where the employee's existing quarters are not satisfactory and for some exceptional reason structural modification is not practicable. We conclude on the basis of the legislative history surrounding N.C. [Gen. Stat.] § 97-29, this

Court's prior interpretation of that statute and the persuasive authority of other courts interpreting similar statutes that the employer's obligation to furnish "other treatment or care" may include the duty to furnish alternate, wheelchair accessible housing.

*Derebery*, 318 N.C. at 203-04, 347 S.E.2d at 821.

The other North Carolina appellate decision addressing the general subject before us in this case is *Timmons v. N.C. Dept. of Transportation*, 123 N.C. App. 456, 473 S.E.2d 356 (1996), *aff'd per curiam*, 346 N.C. 173, 484 S.E.2d 551 (1997). After suffering an injury that rendered him a paraplegic, the plaintiff in *Timmons* bought land and sought financial assistance from the defendant in order to construct a handicapped-accessible home. After the Commission ruled that the plaintiff "was entitled to financial assistance in constructing a handicapped accessible residence" and "ordered defendant to pay, pursuant to [N.C. Gen. Stat.] § 97-25, the expense of rendering the home which plaintiff plans to build accessible to his disabilities," *Timmons*, 123 N.C. App at 459, 347 S.E.2d at 358, both parties appealed. In its opinion, this Court noted that:

Defendant argues that it should not be required to bear any of the expense of making the residence accessible to plaintiff's handicap; by cross-assignment of error, plaintiff contends defendant should bear the entire cost of construction of a residence which would accommodate his disabilities.

*Timmons* at 460, 347 S.E.2d at 358. However, this Court upheld the Commission's decision, stating that:

[T]he expense of housing is an ordinary necessity of life, to be paid from the statutory substitute for wages provided by the Workers' Compensation Act. The costs of modifying such housing, however, to accommodate one with extraordinary needs occasioned by a workplace injury, such as the plaintiff in this case, is not an ordinary expense of life[.] . . . Such extraordinary and unusual expenses are, in our view, properly embraced in the "other treatment" language of [N.C. Gen. Stat.] § 97-25, while the basic cost of acquisition or construction of the housing is not.

*Timmons* at 461-62, 347 S.E.2d at 359. As a result, both *Derebery* and *Timmons* draw a distinction between the ordinary expenses of life and the extraordinary expenses associated with modifying or constructing housing for the purpose of rendering it handicapped-accessible. However, neither decision addresses an employer's

obligation to pay ongoing rental expenses that are attributable to a plaintiff's disability such as the cost of an additional bedroom used to store the equipment, supplies, and mobility-related devices needed to accommodate Plaintiff's paraplegia. As we have previously noted, the extent to which "specially adaptive vehicles and wheelchair-accessible housing are compensable under the statute are debatable issues, as the four dissents in *Derebery* and *McDonald* [*v. Brunswick Elec. Membership Corp.*, 77 N.C. App. 753, 336 S.E.2d 407 (1985)] indicate." *Grantham v. Cherry Hospital*, 98 N.C. App. 34, 40, 389 S.E.2d 822, 825, *disc. review denied*, 327 N.C. 138, 394 S.E.2d 454 (1990). Although the Commission ultimately determined that Defendants should pay half the rental cost associated with Plaintiff's apartment, a result which neither party has challenged on appeal, the paucity of published cases addressing the extent to which an employer or insurance carrier is liable for the additional costs associated with housing for handicapped individuals and the complete absence of any decision addressing the extent to which employers and their carriers are liable for ongoing increased rental payments stemming from needs like those present here causes us to conclude that the Commission did not err by determining that Defendants did not act unreasonably in defending against Plaintiff's claim for rental payments.

In seeking to persuade us to reach a different result, Plaintiff argues that Defendant's evidence, as summarized in the Commission's order, does not demonstrate the existence of a valid legal issue. Assuming, without in any way deciding, that Plaintiff's contention is well-founded, we conclude that "the Commission's decision was unaffected by any prejudicial error in its use of different reasoning." *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 133, 468 S.E.2d 283, 288, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996) (citations omitted). "[W]here a trial court has reached the correct result, the judgment will not be disturbed on appeal even where a different reason is assigned to the decision." *Eways v. Governor's Island*, 326 N.C. 552, 554, 391 S.E.2d 182, 183 (1990) (citations omitted). Thus, given that Defendants had a legitimate justification for resisting Plaintiff's claim, the fact that Defendants' evidence may not have been directly on point does not justify a reversal of the Commission's decision.

[2] In addition, Plaintiff challenges the Commission's finding that Defendants "raised a legitimate issue as to how the rent should be prorated between Defendants and Plaintiff, even if they were required to pay a portion of the rent." Plaintiff asserts that, if this issue "were to be considered a legitimate defense, it was certainly a

very minor part of the litigation and in no way was a defense to the primary issue of whether the rent subsidy should be paid by the carrier in the first place." The validity of this aspect of Plaintiff's argument assumes that the issue of proration, which Plaintiff characterizes as minor, was the only basis upon which the Commission might conclude that Defendant's defense to Plaintiff's claim was reasonable. However, as we have already concluded, the Commission did not err by finding that Defendants did not act unreasonably by resisting Plaintiff's claim for the payment of ongoing rental expenses. For that reason, even if Plaintiff is correct in contending the proration issue was a relatively minor one, that fact does not support invalidation of the Commission's decision.

[3] Finally, Plaintiff argues that the trial court erred by making Finding of Fact No. 17, in which the Commission found that "Defendants' conduct has been reasonable from the time of Plaintiff's injury" and that, "[c]onsidering all of the evidence, Defendants' conduct and defense in this case did not constitute stubborn unfounded litigiousness." In this finding of fact, the Commission enumerated instances in which Plaintiff's employer and "Defendants" generally took action for the purpose of assisting Plaintiff. Although Plaintiff objects to this finding on the grounds that it implicitly allows one of the two defendants, the insurance carrier from which Defendant McGee Brothers purchased workers' compensation coverage, to "piggyback" on the generous actions of Defendant McGee Brothers and suggests that, because Defendant McGee Brothers and Defendant Zurich American are "separate defendants in this action," the Commission was required to evaluate the validity of each defendant's conduct separately, we do not find this argument persuasive.

Admittedly, several of the statements contained in Finding No. 17 do refer to the "Defendants" rather than specifically referring to one defendant or the other. For example, the Commission found that "Defendants . . . assisted Plaintiff in his move to an apartment after he moved from the home of Mr. and Ms. Wright that Defendant-Employer had renovated for him after living there for approximately six months;" that "Defendants . . . provided Plaintiff an advance payment to assist with the rent on his apartment for the first year after he moved to his own apartment;" and that "Defendants agreed to take a credit in the future in the amount of the advance payment if Plaintiff's case was resolved." However, acceptance of Plaintiff's contention that Defendant Zurich American is improperly getting credit for actions taken by Defendant McGee Brothers would require us to

speculate concerning the extent, if any, to which the two defendants communicated about Plaintiff's claim, agreed on a defense strategy, or worked together in other ways. In addition, the fact that the Commission mentioned several actions by Plaintiff's employer in its order does not establish that, in making its ultimate decision to deny Plaintiff's motion for attorney's fees, the Commission could not or did not separate the respective actions taken by the two defendants. Thus, we conclude that the Commission did not err by listing certain actions taken by Plaintiff's employer, rather than by the insurance carrier in Finding of Fact No. 17 and that Plaintiff's final challenge to the trial court's decision lacks merit.

### III.  Conclusion

As a result, for the reasons set forth above, we conclude that the Commission did not commit any error in denying Plaintiff's motion for attorney's fees. Thus, the Commission's order should be, and hereby is, affirmed.

AFFIRMED.

Judges CALABRIA and THIGPEN concur.